IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| FN HERSTAL, S.A., and<br>FN AMERICA, LLC,<br><br>    Plaintiffs,<br><br>  v.<br><br>SARSILMAZ SILAH SANAYI<br>ANONIM SIRKETI, and<br>SAR USA CORP.<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No.:  1:23-cv-1380<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

# COMPLAINT

Plaintiffs FN Herstal, S.A. ("FNH") and FN America, LLC ("FNA") (collectively "Plaintiffs" or "FN"), for their complaint against Defendant, Sarsilmaz Silah Sanayi Anonim Sirketi ("Sarsilmaz") and Defendant SAR USA CORP. ("SAR USA") (collectively "Defendants") allege as follows:

1.  This is an action for willful federal trademark infringement and unfair competition involving claims arising under the Trademark Act of the United States, commonly known as the Lanham Act 15 U.S.C. §§ 1051 et seq., and for state trademark infringement, injury to business reputation, and unfair competition under the laws of the Commonwealth of Virginia, involving claims arising under the Trademark Registration and Protection Act, Virginia Trademark and Service Mark Act §59.1-92.1 et seq., and the common law. Defendants have adopted an almost identical trademark to sell the same goods as Plaintiffs in an attempt to trade of the goodwill built up over an extensive period of time.  Unchecked, Defendants' actions will confuse consumers and continue to cause Plaintiffs harm.

1

## PARTIES

2. Plaintiff FNH is a corporation organized and existing under the laws of Belgium, with its principal place of business located at Voie de Liège 33, B-4040 Herstal, Belgium.

3. Plaintiff FNA is a limited liability company organized under the laws of Delaware, having a principal place of business located at 7950 Jones Branch Drive, Suite 602N, McLean, Virginia.

4. Defendant Sarsilmaz Silah Sanayi Anonim Sirketi is an "anonim sirketi (a.s.)" organized and existing under the laws of Turkey, with its principal place of business located at İstiklal Osb1 Mah. 5. Cad. 20, 81600 Beyköy-Merkez- Düzce, Turkey ("Sarsilmaz").

5. Defendant SAR USA CORP. is a corporation organized and existing under the laws of Florida, with its principal place of business located at 11500 NW 34th Street Doral, FL 33178 ("SAR USA").

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1121, and has subject matter jurisdiction over the state law claims under 28 U.S.C. §§ 1338(b) and 1367 because such state law claims are joined with and related to claims under the Trademark Laws of the United States.

7. This Court has personal jurisdiction over Defendants as these causes of action arise as a result of Sarsilmaz's and SAR USA's actions in doing and transacting business in this district offering to sell their products and making their products available by promoting the infringing mark to prospective purchasers within this district and marketing their services and products to prospective purchasers within this District. Attached hereto at **Exhibit 1** is a screenshot of https://sarusa.com/dealer-locator/ showing dealers within the district where Sarsilmaz firearm

products are being sold by SAR USA via SAR USA's website at https://sarusa.com/. Further, attached hereto at **Exhibit 2** is a screenshot of https://www.greentophuntfish.com/sar-usa-sar9-compact-9mm-luger-4/ showing Defendants' firearm product being sold at Green Top, a store within the district located at 10150 Lakeridge Parkway, Ashland, Virginia 23005, in Hanover county, Virginia, and a screenshot of VAGUNSHOP.com's website at https://www.vagunshop.com/catalog.php?search_for=SAR, another store within the district located at 201 Davis Drive, Unit FF, Sterling, Virginia 20164, selling Defendant's firearms and which specifically targets Virginia residents. Further, Defendants operate via the sarusa.com website which is an interactive commercial website soliciting business from and selling and shipping products to Virginia customers.

8. Venue is proper within the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(a), (b) and (c). Additionally, venue is proper in this District for Defendant Sarsilmaz, a Turkish entity, as a defendant not resident in the United States may be sued in any judicial district under 28 U.S.C. § 1391(c)(3). Furthermore, Plaintiff FNA, the U.S. subsidiary of Plaintiff FNH, has a facility and its headquarters located within this District.

**FACTS**

*FN and its SCAR Trademark*

9. FNH is a long-established and famous firearms and weapons manufacturer whose history dates to 1889. FNH manufactures and distributes a full range of firearms and accessories for defense, law enforcement, hunting, marksmanship and for persons having an interest in acquiring such firearms and accessories. FNH engages in designing, testing, manufacturing, marketing, and selling light and portable weapons, integrated weapons systems, ammunition, and associated products, with many such products in widespread worldwide distribution, often with items particularized for military and law enforcement operations. FNH continues to focus on innovation

3

and product improvements, resulting in products being renowned and used throughout the world.

10. FNH manufactures, distributes, and sells firearms and related items under the trademark "SCAR." Hereinafter, the SCAR trademark including the two federal registrations for such trademark shall be defined as the "SCAR Marks."

11. FNA is a wholly owned subsidiary of FNH that manufactures, assembles, markets and sells firearms and related items to commercial, law enforcement, and U.S. Government customers in the United States under the SCAR Marks. FNA also assembles and manufacturers components of the SCAR branded firearms at its Columbia, South Carolina production facility. FNA is the exclusive licensee for use of the SCAR Marks in the U.S.

12. In or around 2004, the United States Special Operations Command ("USSOCOM") awarded FNH a ten-year contract, placing a large initial order for SCAR firearms. From that point forward, the U.S. Military's special forces regularly used SCAR branded rifles.

13. In or around 2005, FNH also began promoting its SCAR rifle to law enforcement and civilians. Throughout 2005 and 2006, FNH showcased its military SCAR rifle at hundreds of trade shows, including one of the largest firearms shows in the world, the Shooting, Hunting, and Outdoor Trade Show ("SHOT Show"), as well as National Rifle Association shows, the National Defense Industrial Association Small Arms forum, the Association of the United States Army show, International Chiefs of Police shows, the National Sheriff Show, the Mock Prison Riot, the SWAT Round Up, the Police and Security Expo, and others.

14. After years of research, testing, and regulatory approval, FNH released the civilian version of the SCAR rifle in November 2008. Since then, FN's SCAR Marks have been in continuous use in the United States.

15. FN has extensively and continuously promoted and sold its firearm products under the SCAR Marks in the United States and globally for well over a decade. Further, FN has developed

and sold a range of "SCAR" branded firearms over the years to include numerous models, and continues to regularly develop and release new "SCAR" branded firearms.

16. FNH has sought to protect FN's valuable rights in the SCAR Marks for the items sold under this trademark. FNH is the owner of valid and subsisting United States Trademark registrations on the Principal Register in the United States Patent and Trademark Office, including the following: U.S. Registration No. 5,314,134, filed on April 22, 2008 and issued on October 24, 2017; and U.S. Registration No. 4,100,728, filed on January 13, 2011 and issued on February 21, 2012 (together "SCAR Registrations"). The SCAR Registrations are attached hereto at **Exhibit 3 and 4.**

17. The SCAR Registrations are in full force and effect, and both registrations have achieved "incontestable" registration status under 15 U.S.C. § 1065. Further, reviewing courts have confirmed FN's rights in the SCAR Marks. *See FN Herstal, S.A. v. Clyde Armory, Inc.,* 123 F. Supp. 3d 1356 (M.D. Ga. 2015), aff'd, 838 F.3d 1071 (11th Cir. 2016), *cert. denied*.

18. The priority date for Registration No. 5,314,134 is November 12, 2007 and the priority date for Registration No. 4,100,728 is September 8, 2010. *See* Exhibits 3 and 4.

19. Registration No. 5,314,134 covers goods identified as "*Fire-arms, ammunition and projectiles; assault rifles; explosives; detonators; ballistic weapons; cases and holsters for rifles and handguns; noise-suppressors for guns; non-telescopic sights for firearms; firing platforms in the nature of supports*" in International Class 13.

20. FN's rights in the SCAR Marks stretch across multiple classes of goods and services. Due to the FN's fame in the underlying mark, consumers have demanded even non-firearms replicas of the firearm associated with the SCAR Marks. As such, Registration No. 4,100,728 covers replica firearms and related products in International Class 28.

21. By reason of FNH's SCAR Registrations and FN's extensive promotion and sales of

5

products under the SCAR Marks, the SCAR Marks have acquired great recognition and renown in the relevant trade, and prospective purchasers have come to recognize goods and services under the SCAR Marks as emanating exclusively from FN. As a result of its widespread, continuous, and exclusive use of the SCAR Marks to identify its goods and FN as their source, FNH owns valid and subsisting federal statutory and common law rights to the SCAR Marks.

***Defendants' Infringement of the SCAR Trademark***

22. Notwithstanding FN's well-known and established rights in the SCAR Marks, Sarsilmaz recently applied to register with the United States Patent and Trademark Office ("USPTO") the trademark SAR, including for, among other goods, firearms including, namely, rifles (the "Infringing SAR Mark").

23. Specifically, on February 9, 2022, Sarsilmaz filed a trademark application for the Infringing SAR Mark, Serial No. 97/259,697 for goods descried as "*Firearms, namely, guns, rifles, pistols, shotguns; air guns, namely, air pistols; spring-powered guns; cases and shoulder straps for fire-arms; artillery guns; explosives, namely, mortars, rockets, fireworks; sprays for personal defense purposes*" in International Class 13 (the "Infringing Application"). A copy of the Infringing Application is attached hereto as **Exhibit 5**.

24. Sarsilmaz filed the Infringing Application with a 1(b) "intent-to-use" basis. *See* Exhibit 5. Upon information and belief, the Applicant's earliest priority date in the Infringing SAR Mark in the United States for the goods identified in the Infringing Application is February 9, 2022, the filing date of the intent-to-use based Infringing Application.

25. FN holds priority of rights in its SCAR Marks over the Infringing SAR Mark. *See* Exhibits 3-5.

26. FN's priority of rights in its SCAR Marks is established by its prior use in commerce of the SCAR Marks in the United States, which extends for more than a decade prior to

the filing date of the intent-to-use based Infringing Application, which is Sarsilmaz's earliest priority date in the Infringing SAR Mark.

27. Sarsilmaz has filed the Infringing Application for its Infringing SAR Mark to cover the same and similar products and firearms that FN sells under the well-known SCAR Marks – namely, *"rifles"*. *See* Exhibit 5. Such goods are identical and overlapping with the goods sold by FN under the SCAR Marks.

28. Sarsilmaz and SAR USA are also currently using the Infringing SAR Mark to promote a range of firearm products on SAR USA's website at the URL https://sarusa.com/ ("SAR USA Website"). A screenshot of the SAR USA homepage at https://sarusa.com/ as of July 5, 2023, is attached hereto as **Exhibit 6.**

29. A current version of the SAR USA homepage at https://sarusa.com/, accessed October 10, 2023, showing use of the Infringing SAR Mark with the generic term "firearms" in an updated logo, is attached hereto as **Exhibit 7.** Such use of "SAR" with the generic term "firearms" does not further distinguish the Infringing SAR Mark from FN's SCAR Marks.

30. Sarsilmaz and SAR USA promote their products to U.S. consumers via the SAR USA Website, an interactive commercial website where customers can order products. Such promotion and sales include to Virginia customers and via distributors in this judicial district.

31. Sarsilmaz and SAR USA also promote their products to U.S. consumers via social media channels and promotional videos, including YouTube. A screenshot of a video from the NRA Annual 2023 Meet at https://www.youtube.com/watch?v=1fv83UhSNfM&t=2s, accessed October 10, 2023, featuring use of the Infringing SAR Mark on the video as well as on promotional materials used at the event is attached hereto as **Exhibit 8**.

32. Until as recently as at least December 7, 2022, Defendants used the trademark SAR USA and not the Infringing SAR Mark on the SAR USA Website. A screenshot of the homepage

of the SAR USA Website at https://sarusa.com/ from the WayBack Machine archive on December 7, 2022, is attached hereto as **Exhibit 9**.

33. Sarsilmaz's use and registration, and SAR USA's use, of the Infringing SAR Mark for the same firearms products has and will create a likelihood of confusion, mistake or deception, leading consumers to believe that there is some affiliation, association, or common source of sponsorship with FN's SCAR Marks for firearms or gun related items, or with FN's products, services, or business.

34. Sarsilmaz's use and registration, and SAR USA's use of the Infringing SAR Mark or variations thereof, including use of the Infringing SAR Mark with the term "firearms," with the same and similar products has and will cause, and is likely to cause, confusion and mistake with FN's products and services, disseminated or sold in connection with the SCAR Marks, or FN's business so as to deceive consumers, the trade and others, and thereby constitutes an infringement of FN's rights through unfair competition.

35. Persons familiar with FN's well-known SCAR Marks and the business of FN and/or FN's products are likely to be confused, mistaken and/or to be deceived upon seeing the Infringing SAR Mark or variations thereof, or are likely to believe that Sarsilmaz's and SAR USA's business is endorsed by, sponsored by, or emanates from, or in some way is connected with FN or FN's business or with FN's SCAR Marks.

36. In an attempt to resolve Defendants' infringement, FN conferred with Sarsilmaz to request that it and SAR USA cease use of the Infringing SAR Mark or make changes to avoid confusion. In particular, FN identified Defendants' use of the Infringing SAR Mark in connection with rifles. Defendants have refused to cease use of the Infringing SAR Mark and continue to brazenly and willfully trade upon the goodwill of FN in the SCAR Marks.

37. FN also filed a Notice of Opposition against the Infringing Application with the

USPTO's Trademark Trial and Appeal Board ("TTAB") on May 1, 2023. In the Notice of Opposition, FN opposes registration of Sarsilmaz's Infringing Application due to the mark causing a likelihood of confusion with FN's SCAR Marks and based on FN's senior rights in the SCAR Marks.

38. As a result of Sarsilmaz's and SAR USA's unfair and infringing acts or misappropriations, FN has been irreparably damaged and, unless Defendants' infringing activities are enjoined, FN will continue to suffer irreparable injury and harm to its property and goodwill.

39. Defendants' products designed or intended for sale under the Infringing SAR Mark move through multiple channels of trade that are similar or identical to those of FN's SCAR products and are promoted to the same or similar classes of prospective purchasers or end-users. Products sold under the Infringing SAR Mark may be advertised at the same trade shows on the same websites or other online or print articles and publications, at the same stores, by the same reviewers, and through the same vendors as the products sold by FN in connection with the longstanding SCAR Marks. FN further understands that Sarsilmaz's and SAR USA's products sold under the Infringing SAR Mark are offered for sale through the same distributors and potentially at the same brick and mortar stores as the products sold by FN in connection with the SCAR Marks.

40. Defendants' use of the Infringing SAR Mark or variations thereof is without FN's consent or permission.

41. Defendants' use of the Infringing SAR Mark or variations thereof will, on information and belief, result in damage and in the diminishment of sales and the loss of the value of FN's SCAR Marks.

42. Upon information and belief, Sarsilmaz and SAR USA, with knowledge of FN's SCAR Marks and in willful disregard of FN's rights, are engaging in a deliberate course of conduct designed to appropriate the goodwill associated with the well-known SCAR Marks. Sarsilmaz's and SAR USA's actions will irreparably harm FN by diminishing the reputation and goodwill of FN's

SCAR Marks. The public association of the SCAR Marks with FN's products is so great that Defendants' use of the Infringing SAR Mark will inevitably cause consumers to mistakenly believe that the products sold under the Infringing SAR Mark, including rifles, in particular, are produced, authorized, licensed, or sponsored by FN, or that Sarsilmaz and SAR USA are somehow connected with FN or FN's SCAR Marks.

43. Sarsilmaz and SAR USA have been engaged in the manufacture, distribution, provision, advertising, promotion, offering for sale, and/or sale of firearms using the Infringing SAR Mark throughout the United States. *See, e.g.,* Exhibits 2, 6, 7, and 8.

44. The sale or prospective sale by Sarsilmaz and SAR USA of products or services under the Infringing SAR Mark or variations thereof, and Sarsilmaz's registration of the Infringing SAR Mark with the USPTO, will also blur and diminish the distinctive quality of FN's SCAR Marks and lessen FN's and the public's capacity to identify and distinguish the products and services of FN versus Sarsilmaz and SAR USA.

45. As a result of its distinctiveness and widespread use and promotion throughout the United States, FN's SCAR Marks is a famous trademark within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. 1125(c), and became famous prior to the acts of Sarsilmaz and SAR USA alleged herein.

**COUNT I**
**(Federal Trademark Infringement in Violation of**
**the Lanham Act – 15 U.S.C. § 1114)**

46. FN realleges and incorporates herein by reference the allegations contained in paragraphs 1-45 of this Complaint as if set forth in full.

47. Sarsilmaz's and SAR USA's unauthorized use in commerce of the Infringing SAR Mark or variations thereof and as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Sarsilmaz's and SAR USA's goods, and is likely to cause consumers to

believe, contrary to fact, that Sarsilmaz's and SAR USA's goods/services are sold, authorized, endorsed, or sponsored by FN, or that Sarsilmaz and SAR USA are in some way affiliated with or sponsored by FN. Sarsilmaz's and SAR USA's conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

48. Sarsilmaz and SAR USA have committed the foregoing acts of infringement with full knowledge of FN's prior rights in the SCAR Marks and SCAR Registrations with the willful intent to cause confusion and trade on FN's goodwill. Sarsilmaz and SAR USA continue to use and have a pending application to register the Infringing SAR Mark with the USPTO despite being notified of FN's objection to Sarsilmaz's and SAR USA's use and Sarsilmaz's registration of the Infringing SAR Mark. Such actions by Sarsilmaz and SAR USA are with an intent and purpose to trade upon the goodwill of FN's SCAR Marks.

49. Sarsilmaz's and SAR USA's conduct is causing immediate and irreparable harm and injury to FN and to FN's goodwill and reputation and will continue to both damage FN and confuse the public unless enjoined by this court. FN has no adequate remedy at law.

## COUNT II
### (Unfair Competition in Violation of the Lanham Act – 15 U.S.C. §§ 1125(a))

50. FN realleges and incorporates herein by reference the allegations contained in paragraphs 1-49 of this Complaint as if set forth in full.

51. Sarsilmaz's and SAR USA's unauthorized use in commerce of the Infringing SAR Mark constitutes a false designation of origin and a false or misleading representation of fact that is likely to confuse or deceive consumers, or cause consumers to believe mistakenly that Sarsilmaz and SAR USA and/or their goods are made or produced and/or its services are offered by FN or are otherwise affiliated, connected, or associated with, or sponsored or approved by FN, and therefore constitutes unfair competition pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a).

52. Sarsilmaz's and SAR USA's use in commerce of the Infringing SAR Mark, in connection with their marketing, distribution, promotion and sale to the consuming public of products constitutes a misappropriation of the distinguishing and identifying features which FN created through substantial effort and expense, thus evoking from the trade, consumers and others an immediate FN's SCAR Marks and the goodwill associated therein.

53. Sarsilmaz's and SAR USA's use of the Infringing SAR Mark constitutes false representations that Sarsilmaz and SAR USA have some connection or association with, or sponsorship by FN, and that the services and products identified with FN are available from Sarsilmaz and SAR USA.

54. Said actions of Sarsilmaz and SAR USA constitute violations of 15 U.S.C. §1125(a) in that such false designation and representations of origin and quality are used on or in connection with the products that Sarsilmaz and SAR USA cause to enter into, or to affect commerce.

55. Sarsilmaz and SAR USA have used and are continuing to use, and are attempting to register with the USPTO, the Infringing SAR Mark with full knowledge of FN's trademark rights in the SCAR Marks, and after FN's objection to their continued use and attempted registration of the Infringing SAR Mark.  Upon information and belief, said actions by Sarsilmaz and SAR USA are with an intent and purpose to trade upon the goodwill of FN, and are thus willful and deliberate.

56. Sarsilmaz's and SAR USA's conduct is causing immediate and irreparable harm and injury to FN and to FN's goodwill and reputation and will continue to both damage FN and confuse the public unless enjoined by this court. FN has no adequate remedy at law.

## COUNT III
### (Virginia Trademark Infringement)

57. FNs realleges and incorporates herein by reference the allegations contained in paragraphs 1-56 of this Complaint as if set forth in full.

58. Sarsilmaz's and SAR USA's unauthorized use in commerce of the Infringing SAR

Mark or of variations thereof is likely to result in confusion, deception or mistake, and therefore constitutes an infringement of FN's SCAR Marks pursuant to VA Code §59.1-92.12.

59. Sarsilmaz's and SAR USA's conduct is causing immediate and irreparable harm and injury to FN and to FN's goodwill and reputation and will continue to both damage FN and confuse the public unless enjoined by this court. FN has no adequate remedy at law.

## COUNT IV
### (Unfair Competition Under Virginia Common Law)

60. FN realleges and incorporates herein by reference the allegations contained in paragraphs 1-59 of this Complaint as if set out in full.

61. Sarsilmaz's and SAR USA's use of the Infringing SAR Mark or variations thereof is being done with the intent to palm off products or services as originating from or having the sponsorship, affiliation, or approval of FN to trade on the goodwill created by FN in the SCAR Marks. Such use has continued in bad faith despite FN's objections to such use.

62. Sarsilmaz's and SAR USA's unauthorized use constitutes the common law tort of unfair competition.

63. Unless restrained by this Court, Sarsilmaz's and SAR USA's actions will cause irreparable injury to FN.

64. Sarsilmaz's and SAR USA's conduct is causing immediate and irreparable harm and injury to FN and to FN's goodwill and reputation and will continue to both damage FN and confuse the public unless enjoined by this court. FN has no adequate remedy at law.

## DEMAND FOR JURY TRIAL

65. FN requests trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, FN prays for judgment as follows:

1. That Sarsilmaz and SAR USA, and their respective directors, officers, agents and

employees, successors and assigns and all others acting in knowing concert with them, be preliminarily and then permanently restrained and enjoined from:

    a)    marketing, advertising, displaying, selling, or distributing products using the Infringing SAR Mark or any variations thereof, alone or in combination with any other word, design or name, or any other mark which incorporates these marks or a confusingly similar version thereof in a manner which is likely to cause confusion, mistake or deception with the SCAR Marks;

    b)    otherwise, infringing FN's SCAR Marks;

    c)    engaging in any other or further acts of unfair competition against FN;

    d)    engaging in any deceptive trade practices in the offering of goods under the Infringing SAR Mark or any other variations or simulations of FN's SCAR Marks; and

    e)    engaging in any deceptive business practice in the offering of goods under the Infringing SAR Mark or any other variations or simulations of FN's SCAR Marks.

2.    That a) Sarsilmaz withdraw its existing application Serial No. 97/259,697 for the Infringing SAR Mark; and b) that Sarsilmaz and SAR USA and their respective directors, officers, agents and employees, successors and assigns and all others acting in knowing concert with them, be preliminarily and then permanently restrained and enjoined from filing any trademark applications for the Infringing SAR Mark or any other variations or simulations of FN's SCAR Marks.

3.    That Sarsilmaz and SAR USA be directed to deliver up for destruction all labels, signs, prints, packages, wrappers, receptacles, advertisements, firearms, or other materials in its possession or custody and control which are within the United States of America, its territories and possessions, which display the Infringing SAR Mark or any other variations or simulations of FN's SCAR Marks, and all means of making or affixing the same pursuant to Section 36 of the Lanham Act, 15 U.S.C. § 1118.

4.    That FN be awarded the profits secured by Sarsilmaz and SAR USA as a result of their

unlawful activities, and that said award be trebled as provided by law or in the alternative that FN be awarded statutory damages and prejudgment interest under 15 U.S.C. §1117(b)(2) in an amount determined by the Court for willful use of an infringing or counterfeit mark.

5. That FN be awarded punitive damages in such amount as the Court and jury shall find sufficient to deter Sarsilmaz's and SAR USA's willful unlawful conduct.

6. That FN be awarded their costs incurred in this action, including reasonable attorneys' fees.

7. That Sarsilmaz and SAR USA be required to file with this Court and serve upon FN within thirty (30) days after entry of the order of judgment a report, in writing and under oath, setting forth the manner and form of Sarsilmaz's and SAR USA's compliance with the Court's order.

8. That FN have such other and further relief as is warranted by the facts established at trial or which this Court may deem as just and equitable.

Respectfully submitted,
FN HERSTAL, S.A., and
FN AMERICA, LLC

By:   */s/ Clinton H. Brannon*
Clinton H. Brannon
Virginia State Bar No. 72340
Counsel for Plaintiffs
WILLIAMS MULLEN
8350 Broad Street, Suite 1600
Tysons, Virginia 22102
Telephone: (703) 760-5226
Facsimile: (703) 748-0244
cbrannon@williamsmullen.com

Robert C. Van Arnam, NC Bar No. 28838
Andrew Shores, NC Bar No. 46600
(*Pro Hac Vice* pending)
WILLIAMS MULLEN
301 Fayetteville Street, Suite 1700
Raleigh, NC 27601
Telephone: (919) 981-4055
Facsimile: (919) 981-4015
Email: Rvanarnam@williamsmullen.com
Email: ashores@williamsmullen.com