IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| FN HERTSAL, S.A., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:23-cv-1380 (RDA/WBP) |
| ) | |
| SARSILMAZ SILAH SANAYI ANONIM ) | |
| SIRKETI, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Sarsilmaz Silah Sanayi Anonim Sirketi's Motion to Dismiss (Dkt. 33). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with Defendant's Memorandum in Support (Dkt. 34), Plaintiffs' Opposition Brief (Dkt. 37), and Defendant's Reply Brief (Dkt. 42), this Court DENIES the Motion for the reasons that follow.

### I. BACKGROUND

#### A. Factual Background

Defendant Sarsilmaz Silah Sanayi Anonim Sirketi ("Sarsilmaz") is an "anonim siketi (a.s.)" organized and existing under the laws of Turkey. Dkt. 30 ¶ 4. Defendant SAR USA Corp. ("SAR USA") is a corporation organized under the laws of Florida. *Id.* ¶ 5. Plaintiffs FN Hertsal S.A. ("FNH") and FN America, LLC ("FNA") assert that Defendants have infringed on their trademarks. *Id.* ¶ 1.

1

Plaintiffs manufacture, distribute, and sell firearms and related accessories under the trademark "SCAR." *Id.* ¶¶ 24-28. Plaintiffs assert that a civilian version of the SCAR rifle was released in November 2008 and that, since then, Plaintiffs' SCAR Marks have been in continuous use in the United States. *Id.* ¶ 29. Consistent with that use, Plaintiffs have registered their marks with the United States Patent and Trademark Office ("USPTO"). *Id.* ¶¶ 31-36.

Plaintiffs assert that Defendants have applied to register with the USPTO the trademark "SAR" for firearms. *Id.* ¶¶ 37-41. Plaintiffs allege that Defendants are using the SAR Mark to promote a range of firearm products on SAR USA's website. *Id.* ¶¶ 43-44.

With respect to personal jurisdiction, Plaintiffs allege: "This Court has personal jurisdiction over Defendants as these causes of action arise as a result of Sarsilmaz's and SAR USA's actions in doing and transacting business in this district [sic], offering to sell their products and making their products available by promoting the Infringing SAR Mark to prospective purchasers within this district [sic], and marketing their services and products to prospective purchasers within this District." *Id.* ¶ 7. Plaintiffs further allege that "Defendants' infringing firearm products" have been sold in Virginia and that the sarusa.com website solicits business from and ships products to Virginia. *Id.* ¶¶ 8-9.

According to the sarsusa.com website Sarsilmaz launched SAR USA in 2018 under the leadership of a family member and now operates as the "exclusive importer of Sarsilmaz firearms and ammunition in the U.S. market." *Id.* ¶ 11. As part of that relationship, "SAR USA also collaborates closely with Sarsilmaz's engineering team to develop new firearms specifically tailored for the American market." *Id.* ¶ 12. In a press release by Sarsilmaz, it indicated that, in 2018, "Sarsilmaz (SAR) established itself in the USA Market" and that it is committed to expanding the USA Market. *Id.* ¶ 13. The Chairman of the Board of Sarsilmaz has stated that the

United States is "one of our target markets" and that "we are engaged in significant works under the umbrella of this company" such that "our market share and sales volume in the US market [has] continue[d] to increase." *Id.* ¶ 14. SAR USA is also promoted as being "BY SARSILMAZ." *Id.* ¶ 15. Sarsilmaz has also published blog posts referring to its attendance at the Shooting, Hunting, Outdoor Trade Show ("SHOT Show") in Las Vega, Nevada, United States and as having "exhibited its state-of-the-art products" there. *Id.* ¶ 18. The Sarsilmaz website also has touted its attendance at the SHOT Show. *Id.* ¶ 19. Plaintiffs further allege, upon information and belief, that Sarsilmaz has attended "in person events to promote its firearms within this district [sic], including the Nation's Gun Show in Chantilly, Virginia" (the "Chantilly Show"). *Id.* ¶ 21.

Sarsilmaz's products are advertised and sold under the mark "SARSILMAZ," as well as various marks featuring the term "SAR." Dkt. 35-1 ¶ 10 (Declaration of Cafer Durukan). Sarsilmaz is not registered to do business in the Commonwealth of Virginia or any other state in the United States. *Id.* ¶ 12. Sarsilmaz does not own or lease property or have employees, officers, or directors in Virginia. *Id.* ¶¶ 13-14. Sarsilmaz asserts that it is a wholly separate entity from SAR USA and that SAR USA is not a subsidiary of Sarsilmaz. *Id.* ¶¶ 18-21. SAR USA is Sarsilmaz's distributor of SAR products in the United States. *Id.* ¶¶ 24-26. Sarsilmaz has never directed SAR USA to advertise and sell firearms in Viriginia, rather its role is to sell firearms in the United States generally. *Id.* ¶ 34. Sarsilmaz has attended the SHOT Show in Las Vegas, but does not sell products there, and has not attended the Chantilly Show. *Id.* ¶¶ 35-38.

Industry publications have referred to SAR USA as a subsidiary of Sarsilmaz. Dkt. 37-1 ¶¶ 3, 5-6 (Declaration of Christopher Cole). SAR USA has also held itself out as a subsidiary of Sarsilmaz. *Id.* ¶ 4. It appears that a Sarsilmaz employee also assists in managing the SAR USA Facebook Page. *Id.* ¶ 7. Although Sarsilmaz did not attend the Chantilly gun show, Sarsilmaz

3

firearms were sold at the National Gun Expo in Chantilly in December 2022. *Id.* ¶¶ 8-9. Finally, documents from the USPTO suggest that Sarsilmaz owns and filed the trademarks under which SAR USA operates and uses in commerce in the United States.

### B. Procedural Background

Plaintiffs filed their original Complaint on October 10, 2023. Dkt. 1. On January 10, 2024, Defendant SAR USA filed an Answer to the Complaint. Dkt. 25. That same day, Defendant Sarsilmaz filed a Motion to Dismiss for Lack of Jurisdiction. Dkt. 26.

On January 24, 2024, Plaintiffs filed an Amended Complaint. Dkt. 30. SAR USA again filed an Answer. Dkt. 36. On February 14, 2024, Sarsilmaz again filed a Motion to Dismiss for Lack of Jurisdiction. Dkt. 33. On February 28, 2024, Plaintiffs filed an Opposition. Dkt. 37. That same day, Plaintiffs filed a Motion for Leave to Conduct Jurisdictional Discovery. Dkt. 38. On March 5, 2024, Sarsilmaz filed a Reply in support of its Motion to Dismiss. Dkt. 42. On March 13, 2024, Sarsilmaz filed an Opposition to the Motion for Leave to Conduct Jurisdictional Discovery. Dkt. 43. On March 19, 2024, Plaintiffs filed a Reply in support of their Motion. Dkt. 44. On April 5, 2024, Magistrate Judge William B. Porter held a hearing on the Motion for Leave to Conduct Jurisdictional Discovery and then denied the motion. Dkt. Nos. 48; 49.[1]

### II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) provides that a court may dismiss a case for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v.*

---

[1] Plaintiffs did not appeal from Judge Porter's denial of their Motion for Leave to Conduct Jurisdictional Discovery.

4

*Anderson*, 816 F.3d 262, 267 (4th Cir. 2016) (citation omitted). If the district court reviews "only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint," then the plaintiff need only make a *prima facie* showing of personal jurisdiction to survive a motion to dismiss under Rule 12(b)(2). *Id.* at 268 (citations omitted). "[T]he court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction," *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989), but the district court need not consider only the plaintiff's proof of personal jurisdiction when deciding which inferences it will make, *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993). Rather, "where the defendant has provided evidence which denies facts essential for jurisdiction, the plaintiff must, under threat of dismissal, present sufficient evidence to create a factual dispute on each jurisdictional element which has been denied by the defendant and on which the defendant has presented evidence." *Indus. Carbon Corp. v. Equity Auto & Equip. Leasing Corp.*, 737 F. Supp. 925, 926 (W.D. Va. 1990) (citation omitted).

Under Rule 12(b)(2), the Court undertakes a two-step inquiry. First, the Court determines whether the long-arm statute of the forum state authorizes the exercise of jurisdiction over the challenging, nonresident defendant. *Carefirst of Md., Inc. v. Carefirst Pregnancy Cntrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Then, the Court evaluates whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the Fourteenth Amendment. *Id.* Because Virginia's long-arm statute extends personal jurisdiction to the outer bounds of the Fourteenth Amendment Due Process Clause, however, "the two-prong test collapses into a single inquiry when Virginia is the forum state." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012). The Due Process Clause of

5

the Fourteenth Amendment requires that a defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Within those parameters, the Court may find that it has either general or specific personal jurisdiction over a defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984). General personal jurisdiction exists when a defendant maintains "continuous and systematic contacts with the forum state, such that [the] defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009). On the other hand, a court may exercise specific personal jurisdiction if a defendant's minimum contacts with the forum state form the basis for the claims in question. *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004).

## III. ANALYSIS

Sarsilmaz moves to dismiss based on a lack of personal jurisdiction. Dkt. 35. Sarsilmaz argues that under either theory of personal jurisdiction, this Court lacks personal jurisdiction over it. *Id.* at 1-2. Plaintiffs argue that this Court has specific personal jurisdiction over Sarsilmaz based on its minimum contacts with Virginia, but, if those minimum contacts do not exist, Plaintiffs argue that there is specific personal jurisdiction based on Sarsilmaz's contacts with the United States as a whole pursuant to Federal Rule of Civil Procedure 4(k)(2). Plaintiffs concede that there is no general personal jurisdiction over Sarsilmaz. Dkt. 37 at 6 n.1. The Court will take each argument in turn.

A. Specific Jurisdiction with Respect to Virginia

As both parties recognize, to determine whether this Court has specific personal jurisdiction, the Court must consider: (1) whether Sarsilmaz purposefully availed itself of the privilege of conducting activities in Virginia; (2) whether Plaintiffs' claims arise out of activities that Sarsilmaz directed towards Virginia; and (3) whether exercising personal jurisdiction is constitutionally reasonable. Dkt. 37 at 1; Dkt. 42 at 4 (citing *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002)). Plaintiffs' arguments here fail at the first step.

To begin with, courts within this District have uniformly recognized that a trademark registration is not sufficient to comport with traditional specific jurisdiction requirements. *See, e.g.*, *Anova Food, Inc. v. Tuna Processors, Inc.*, 2007 WL 9807439, at *1 (E.D. Va. Nov. 2, 2007) (holding that, "if the plaintiff's view were accepted, every dispute involving a United States patent could be litigated in this court, a result that would undermine traditional personal jurisdiction jurisprudence"). Outside of this, Plaintiffs acknowledge that they do not contradict evidence submitted by Sarsilmaz that Sarsilmaz does not maintain an office in Virginia, own property in Virginia, or maintain employees or directors/officers in Virginia. Dkt. 35-1 ¶¶ 13-15; Dkt. 37 at 7. Nonetheless, Plaintiffs argue that they can establish specific personal jurisdiction based on: (i) Sarsilmaz's direct marketing into Virginia; (ii) Sarsilmaz's relationship with dealers within this District; and (iii) Sarsilmaz's relationship with SAR USA.

First, Plaintiffs argue that Sarsilmaz directly marketed its products in Virginia and, specifically, this District in reliance on Sarsilmaz products being present at the Chantilly Show. Dkt. 37 at 7. To begin with, a picture of the Sarsilmaz weapon being displayed at the Chantilly Show is not evidence that Sarsilmaz purposefully availed itself of Virginia. Dkt. 37-1 at Exhibit E; *AESP, Inc. v. Signamax, LLC*, 29 F. Supp. 3d 683, 690 (E.D. Va. 2014) (recognizing that

personal jurisdiction is not established simply because a "product is sold in the state" or where the stream of commerce "may or will sweep the product into the forum State"). Likewise, the picture attached to the Amended Complaint regarding a "Sarsilmaz pistol made by Turkish company Sarsilmaz Firearms Corp. exhibited at The Nation's Gun Show expo" fails to demonstrate that *Sarsilmaz* had anything to do with the gun being exhibited at the Chantilly Show. Dkt. 30-10.[2] This evidence fails to contradict the evidence put forth by Sarsilmaz that it has never attended the Chantilly Show. Dkt. 35-1 ¶ 38.

Next, Plaintiffs allege that Sarsilmaz had a relationship with firearms dealers in Virginia. Dkt. 37 at 8. But the exhibits attached to the Amended Complaint and the Declaration attached to the Opposition do not support this argument. The exhibits demonstrate that SARS USA had a relationship with certain dealers in Virginia. Dkt. 30-1 (dealer locator on SARS USA website). But Plaintiffs have put forth no evidence from which the Court could determine that SARS USA's relationship with those dealers is attributable to Sarsilmaz.

With respect to the relationship between SARS USA and Sarsilmaz, Plaintiffs attempt to argue that Sarsilmaz controls SARS USA. However, the evidence upon which they rely is insufficient to establish that connection. To establish this control, Plaintiffs rely on several facts: (i) that SARS USA is under the leadership of a family member; (ii) that SARS USA and Sarsilmaz collaborate on engineering; (iii) that various publications have referred to Sarsilmaz as a parent or sister corporation of SARS USA; and (iv) the registration of trademarks by Sarsilmaz and used by SARS USA. Dkt. 37 at 10-12. These facts are insufficient to demonstrate that Sarsilmaz purposefully directed any activity towards Virginia or controlled SARS USA such that it is a shell

---

[2] Plaintiffs do not address the fact that this exhibit appears to refer to a third corporate entity – Sarsilmaz Firearms Corp. Dkt. 30-10.

8

of Sarsilmaz. The only direct overlap between Sarsilmaz and SARS USA is the suggestion of a single Turkish individual associated with a Facebook page for SARS USA. Dkt. 37-1 at Exhibit D.[3] But Plaintiffs have not explained the significance of the Facebook page (does SARS USA sell firearms through Facebook?) nor have Plaintiffs explained how this single individual's involvement with this website constitutes purposeful availment of *this* forum. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002) (where internet contacts form the basis of personal jurisdiction analysis the defendant must have "direct[ed] electronic activity into the State"); *Young*, 315 F.3d at 263 (holding that personal jurisdiction "in the Internet context requires proof that the out-of-state defendant's Internet activity is expressly targeted or directed at the forum state"). To the extent that Plaintiffs rely on this connection to establish that Sarsilmaz "controls" SARS USA, such an argument is entirely speculative where there is no information about how the Facebook page is used or the role of this Turkish individual and in the face of Sarsilmaz's evidence that it does not control SAR USA. Dkt. 35-1 ¶¶ 18-34 (averring that Sarsilmaz and SAR USA are separate entities and that Sarsilmaz does not direct or control SAR USA); *see Harris v. Option One Mortg. Corp.*, 261 F.R.D. 98, 110-11 (D.S.C. 2009) (granting motion to dismiss based on lack of personal jurisdiction where plaintiff's allegations of control by one entity of another were speculative).

Plaintiffs' allegation regarding the fact that SARS USA and Sarsilmaz collaborate on engineering suffers the same deficiency. This allegation fails to persuade on two fronts. That Sarsilmaz might collaborate with SARS USA to create products that target the U.S. market says nothing to suggest that the products were purposefully directed *to Virginia*. *See Freescale Semiconductor, Inc. v. Amtran Tech. Co.*, 2014 WL 1603665, at *5 (W.D. Tex. Mar. 19,

---

[3] This allegation is not included in the Amended Complaint.

9

2014)(finding evidence of a foreign manufacturer's "close collaboration" with its two U.S. distributors to be insufficient to support an exercise of specific personal jurisdiction in Texas, because "no evidence demonstrate[d] that any of [the foreign manufacturer]'s conduct or activity [wa]s any more specifically directed at [Texas] than it [wa]s at the North American market as a whole"). To the extent that Plaintiffs rely on this collaboration to demonstrate an agency relationship, the argument fails to persuade because "collaboration" is far from "control." Without further allegations or information, Plaintiffs' contention that this collaboration suggests control is speculative in the face of the declaration submitted by Sarsilmaz. Dkt. 35-1 ¶¶ 18-34 (averring that Sarsilmaz and SAR USA are separate entities and that Sarsilmaz does not direct or control SAR USA); *In re Impact Absorben Tech., Inc.*, 106 F.3d 400, 1996 WL 765327, at *3 (6th Cir. 1996) (unpublished) (finding no personal jurisdiction where "Impact has never sold its products, solicited, or advertised in Ohio" and "Loraday is not its agent, and the actions of a distributor do not create the minimum contacts necessary to extend personal jurisdiction to the manufacturer of a product").

Plaintiffs' contention that industry publications and press articles establish an agency relationship between Sarsilmaz and SAR USA is likewise unpersuasive. Notably, these publications are themselves contradictory. *Compare* Dkt. 37-1 ¶ 10 (describing the relationship between SAR USA and Sarsilmaz as "sister" companies) *with id.* ¶12 (describing SAR USA as a "branch" of Sarsilmaz). That industry publications do not understand the corporate formalities and distinctions between the companies does not establish that such distinctions do not exist. *See TrueNorth Companies, L.C. v. TruNorth Warranty Plans of N. Am., LLC*, 423 F. Supp. 3d 604, 615-16 (N.D. Iowa 2019) (collecting cases for the proposition that news articles are insufficient to establish an agency relationship; *see also Payoda, Inc. v. Photon Infotech, Inc.*, 2015 WL 4593911,

10

at *3 (N.D. Cal. July 30, 2015) ("[M]arketing puffery carries no weight in establishing whether a parent and its subsidiary are in fact alter egos.").

Thus, the Court must address Plaintiffs' final argument that it has alleged sufficient facts to demonstrate that SAR USA is a "mere shell" for Sarsilmaz. Dkt. 37 at 10. Plaintiffs have failed to establish a *prima facie* case that plausibly alleges this to be true. Importantly, Plaintiffs' argument is based on facts that are contradicted by Plaintiffs' own allegations. Plaintiffs argue that the Court may find an agency relationship based on "common ownership" between SAR USA and Sarsilmaz. Dkt. 37 at 10. Plaintiffs' own allegations, however, are that they are not commonly owned; rather, SAR USA is run by a family member of those who control Sarsilmaz. Dkt. 30 ¶ 11. Moreover, Plaintiffs' allegations of "direction" and "control" by Sarsilmaz are unsupported by the declaration upon which they rely and are contradicted by the declaration submitted by Sarsilmaz. Dkt. 35-1. Plaintiffs allege no specific facts regarding any instruction given by Sarsilmaz directed towards Virginia or otherwise. Plaintiffs provide no specific examples of how Sarsilmaz exercises control. Rather, Plaintiffs extrapolate and speculate that Sarsilmaz must control SAR USA because: (i) SAR USA is owned by a family member; (ii) SAR USA is the U.S.-based distributor; (iii) the marketing materials are less than clear; (iv) a Turkish individual appears to be associated as an administrator for the SAR USA Facebook page; and (v) they share a trademark. These bare generalizations are not enough to establish an alter ego relationship sufficient to support minimum contacts with Virginia. *See, e.g., Colt Def. LLC v. Heckler & Koch Def., Inc.*, 2004 WL 7350327, at *15 (E.D. Va. Oct. 22, 2004 (recognizing that "[t]he barometer for control . . . is whether or not the [parent] exercised substantial influence over the [subsidiary's] decision to carry on the in-forum activities which constitute the relevant 'minimum contacts'"); *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1297 (S.D. Cal. 2003) (holding that the "use of a common trademark and

trade name" is not sufficient to confer personal jurisdiction over a parent company). The argument is especially lacking where it is contradicted by a declaration submitted by Sarsilmaz. Dkt. 35-1. There "are no facts in the record as to Virginia contacts which serve to contradict" the declaration submitted by Sarsilmaz and "the bare allegation of . . . agency is insufficient to establish personal jurisdiction." *Lolavar v. de Santibanes*, 430 F.3d 221, 230 (4th Cir. 2005).

In sum, Plaintiffs have failed to establish that Sarsilmaz purposefully availed itself of Virginia by reaching out to Virginia itself and they have also failed to establish that Sarsilmaz had an agency relationship with SAR USA such that SAR USA's contacts could establish minimum contacts with Virginia for Sarsilmaz.

## B. Rule 4(k)(2)

Perhaps recognizing the rather tenuous ground on which their specific personal jurisdiction argument rests, Plaintiffs also argue that personal jurisdiction in this Court exists pursuant to Federal Rule of Civil Procedure 4(k)(2). Rule 4(k)(2) allows a federal court to assert jurisdiction in cases "arising under federal law" when the defendant is not subject to personal jurisdiction in any state but has contacts with the United States as a whole. To satisfy Rule 4(k)(2) a plaintiff must establish: (i) exercise of jurisdiction is consistent with the Constitution and laws of the United States; (ii) the claim arises under federal law; and (iii) the defendant is not subject to jurisdiction in the courts of general jurisdiction of any state. *Automobili Lamborghini S.P.A. v. Lamborghini Latino Am. USA*, 400 F. Supp. 3d 471, 474 (E.D. Va. 2019). The first element of the Rule 4(k)(2) analysis requires the same minimum contacts due process analysis, with the significant difference being that the relevant forum is the United States as a whole, not an individual State. *See Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 597 (E.D. Va. 2003). The parties' dispute rests solely with respect to the first element. Dkt. 42 at 13.

Here, Plaintiffs fare better. Courts recognize that sales to American distributors can satisfy due process with respect to Rule 4(k)(2), especially where the federal claims arise out of those sales. *See Sunshine Distrib., Inc. v. Sports Auth. Michigan, Inc.*, 157 F. Supp. 2d 779, 789 (E.D. Mich. 2001) ("The Court is satisfied that Plaintiff's claims arise out of Defendant's contacts with the United States, the first step of the due process inquiry. Plaintiff's claims for infringement and unfair competition stem directly from Defendant's sales to American distributors, and specifically, Defendant's exclusive distributor contract with Razor U.S.A."); *Bluestone Innovations Tex., L.L.C. v. Formosa Epitaxy Inc.*, 822 F. Supp. 2d 657, 664 (E.D. Tex. 2011) (finding that there was no evidence that defendant "made any effort to direct its products to the Texas market" but concluding that jurisdiction was proper under Rule 4(k)(2) because plaintiff made a "*prima facie* showing that [defendant] delivered its allegedly infringing products into the stream of commerce with the expectation that they would be purchased in the United States.").

Here, Sarsilmaz acknowledges that SAR USA is "Sarsilmaz's U.S. distributor for SAR products" and that "SAR USA purchases SAR products from Sarsilmaz for sale in the United States." Dkt. 35-1 ¶¶ 24-25. Thus, it is clear that Sarsilmaz sells its products to SAR USA with the clear expectation and desire that they be sold in the United States. Moreover, as alleged by Plaintiffs, SAR USA and Sarsilmaz collaborate on products that would appeal to the U.S. market. Dkt. 30 ¶ 12 ("SAR USA collaborates closely with Sarsilmaz's engineering team to develop new firearms specifically tailored for the American market."). Sarsilmaz therefore directed its activity toward the United States through its relationship with SAR USA. *See Graduate Mgmt.*, 241 F. Supp. 2d at 598 (finding Rule 4(k)(2) jurisdiction where "[t]he record clearly indicates that Raju directed his activity at the United States market and specifically targeted United States customers"). Moreover, not only does Sarsilmaz direct its activity toward the United States

13

through its relationship with SAR USA, but it individually seeks to reinforce the performance of its products in the United States through its attendance at the SHOT Show. The Supreme Court has held that a plaintiff relies on more than just a "stream of commerce" theory to establish personal jurisdiction where there is deliberate conduct such as "marketing the product through a distributor who has agreed to serve as the sales agent in the forum." *Asahi Metal Indus. Co. v. Superior Ct. of Calif.*, 480 U.S. 102, 112 (1987). Applying *Asahi* in the context of Rule 4(k)(2), judges in this District have held: "It is difficult to imagine a situation more befitting of the exception announced in *Asahi* than this one. [Defendant's] product is not simply whisked away in the stream of commerce. To the contrary, [Defendant] has chosen to employ an exclusive distributor in the forum, and in so doing, according to *Asahi*, it has purposefully availed itself of that forum." *Dee-K Enter., Inc. v. Heveafil Sdn. Bhd.*, 982 F. Supp. 1138, 1147 (E.D. Va. 1997) (denying a motion to dismiss and finding jurisdiction based on Rule 4(k)(2)).[4] Accordingly, the Court finds that Sarsilmaz has sufficient minimum contacts with the United States as a whole.

The Court further finds that it is reasonable to require Sarsilmaz to defend this case in the United States. Both the United States and Plaintiffs have a strong interest in subjecting Sarsilmaz to resolution of the dispute to enforce Plaintiffs' trademark against an alleged infringement, and to seek the protection that the U.S. trademark laws are meant to furnish. Moreover, no other forum

---

[4] The Court does not rely on Plaintiffs' registration of their marks with the USPTO as a basis for its decision here. As Sarsilmaz correctly notes, "the weight of authority rejects basing federal long-arm jurisdiction on the mere registration of a U.S. trademark." *Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 136 (S.D.N.Y. 2020) (collecting cases); *but see VMR Products, LLC v. V2H ApS*, 2014 WL 12591932 (C.D. Cal. Aug. 4, 2014). This conclusion is consistent with this District's approach to personal jurisdiction based on the location of the USPTO. *See, e.g., Pollo Campestre, S.A. de C.V. v. Campero, Inc.*, 2018 WL 10436602, at *2 & n.1 (E.D. Va. Dec. 21, 2018) (finding that "it would be neither fair nor reasonable to exercise personal jurisdiction over CIHL in Virginia based merely on its predecessor's registration of trademarks with the USPTO" and rejecting both Rule 4(k)(1) and (k)(2) jurisdiction).

would have an interest in enforcing those laws. *See Dee-K*, 982 F. Supp. at 1148. Accordingly, Sarsilmaz's motion will be denied.

## IV. CONCLUSION

In sum, although Plaintiffs have failed to establish that specific personal jurisdiction exists with respect to Sarsilmaz, Plaintiffs have established that there are sufficient contacts with the United States as a whole to confer jurisdiction pursuant to Rule 4(k)(2). Accordingly, for the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 33) is DENIED.

It is SO ORDERED.

Alexandria, Virginia
September 20, 2024

/s/
Rossie D. Alston, Jr.
United States District Judge